**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Howard W. ELLZEY, M. D.,**
**Defendant-Appellant.**

**No. 75–1772.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 19, 1975.

Decided Jan. 29, 1976.

Charles C. Burch, Memphis, Tenn., for defendant-appellant.

Thomas F. Turley, U. S. Atty., Glen Reid, Jr., Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and WEICK and ENGEL, Circuit Judges.

PER CURIAM.

Appellant, a practicing physician in Memphis, Tennessee, was convicted by a jury on one count of an indictment charging him with conspiracy to illegally distribute controlled substances in violation of 21 U.S.C. § 846, and on eleven substantive counts charging him with illegally distributing controlled substances in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). Appellant was sentenced to concurrent terms of imprisonment of three years on each count, except count 16, on which he was given probation for three years. He was also fined $1,500 on each count, or a total of $18,000.

Dr. Ellzey operated two offices in Memphis, one on each side of town. He worked in his Mallory Avenue office in the morning and in his Sumner Avenue office in the afternoon.

About one-half of Dr. Ellzey's patients were "diet patients." They would come into his office, would be given a vitamin B-12 injection by the doctor or an assistant, and would be given an amphetamine prescription, usually Preludin. Diet patients paid $15 cash for these visits which usually required from thirty seconds to five minutes with the doctor. The patients would be weighed, but generally not examined. The usual greeting by Dr. Ellzey was, "What do you want?" He would then write the prescription for the drug named by the patient.

Dr. Ellzey's practice attracted the attention of people interested in purchasing amphetamines for resale. They would recruit a carload of overweight men at the employment office, and would pay them to visit Dr. Ellzey's office and obtain prescriptions for amphetamines. These carloads would go to one office of the doctor in the morning, and then the same people were taken to his other office in the afternoon.

Dr. Ellzey generally declined to issue more than one prescription for amphetamines to any one person in a month from one office, and he kept separate records in each office so one person could see him twice in one day at the two offices, and could receive two prescriptions.

The Drug Enforcement Administration (DEA) performed a survey of amphetamine prescriptions in which schedule II prescriptions from six drugstores in the Memphis area were examined by DEA agents. These drugstores had filled 39,-000 prescriptions for schedule II drugs from 152 physicians and dentists in the twenty-two months' period covered by the survey. Of these 39,000 prescriptions, 29,000 were written by Dr. Ellzey, and all but 200 of his schedule II prescriptions were for amphetamines and amphetamine-type drugs.

■ In our opinion there was substantial evidence to support the judgment of conviction on both the conspiracy and the substantive counts of the indictment. The District Court did not err in denying the motions for judgment of acquittal.

■ The appellant contends that it was error for the Government to introduce into evidence three suitcases containing 29,000 prescriptions written by him, and for the United States attorney to comment thereon in his argument to the jury. The Court admitted this evidence as relevant to the issues of intent and wilfulness, and gave limiting instructions to the jury. We find no error in these respects.

**1308**

It is next contended that the indictment was defective because it charged the doctor with "distributing" rather than with dispensing. It seems to us that this contention is merely a play on words, as the evidence was to the effect that the doctor did distribute within the meaning of 21 U.S.C. § 841(a)(1). *United States v. Black*, 512 F.2d 864, 866 (9th Cir. 1975); *United States v. Badia*, 490 F.2d 296, 298 (1st Cir. 1973). *But see United States v. Leigh*, 487 F.2d 206 (5th Cir. 1973), which we decline to follow. The prescriptions written by Dr. Ellzey were illegal prescriptions. He did not observe generally accepted medical practices, but distributed like a "pusher." His operation was on a large scale. The Government offered testimony of other doctors to the effect that such activities were outside the usual course of professional practice.

In *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), the Supreme Court considered an analogous case, which is controlling here. There the indictment charged both distributing and dispensing.

In our opinion the District Court did not err in the admission of testimony, nor in its instructions to the jury. The Court did not err in its voir dire examination of the jurors with respect to a newspaper article which none of them had read.

Other alleged errors have been considered, but do not merit discussion.

Affirmed.