UNITED STATES of America,
Plaintiff-Appellee,

v.

B. H. WEBB, a/k/a Hamp Webb,
Defendant-Appellant.

No. 79–5737
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B.

Sept. 12, 1980.

William C. Head, Athens, Ga., for defend-ant-appellant.

Richard E. Nettum, Asst. U.S. Atty., Ma-con, Ga., for plaintiff-appellee.

Before HILL, FAY and ANDERSON,
Circuit Judges.

JAMES C. HILL, Circuit Judge:

A jury found that Hamp Webb willfully shot a passing helicopter. 18 U.S.C.A. § 32 (West 1969). Webb appeals his conviction, claiming evidentiary error and misconduct by the trial judge. We affirm.

The helicopter pilot, one Moore, tes-tified that he was flying past Webb's house when he saw Webb run out to a parked car, take out a rifle and commence firing. That

was the incident for which Webb was indicted. Moore continued, however, to testify that someone on Webb's property again shot at him some days after the incident in question. Webb objected to the admission of this subsequent similar act, his first claim of error here.

In *United States v. Beechum,* 582 F.2d 898 (5th Cir. 1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), we held that prior similar acts were admissible as against criminal defendants, when (1) relevant to an issue other than character; and (2) not unfairly prejudicial within the meaning of Fed.R.Evid. 403. *Beechum,* 582 F.2d at 911. *See* Fed.R.Evid. 404(b). That same analysis governs subsequent similar acts. *See United States v. Myers,* 550 F.2d 1036, 1044 n. 10 (5th Cir. 1977). Webb apparently concedes that the alleged subsequent shooting was relevant to proving criminal intent, *i. e.,* it rendered less plausible any suggestion that the identical first incident was a hunting accident. *Cf. United States v. Dunbar,* 614 F.2d 39, 42 (5th Cir. 1980). Webb's complaint is that the shooter's intent was undisputed, that if—contrary to his alibi—he were the shooter, further proof of intent was cumulative and unnecessary. *Cf. United States v. Goodwin,* 492 F.2d 1141, 1152 (5th Cir. 1974).

■ As it turned out at trial, Webb's sole defense was an alibi, viz., that he was planting turnips when the shooting incident occurred. We may assume, without deciding, that if Webb had offered so to stipulate in advance of trial, *cf. United States v. Mohel,* 604 F.2d 748, 752–53 (2d Cir. 1979); *United States v. Manafzadeh,* 592 F.2d 81, 87 (2d Cir. 1979), the Government's need might have diminished to the point where admission of the subsequent incident would have been error. *See* Fed.R.Evid. 403. When the Government put on its case-in-chief, however, it had no assurance of what the defense would be. It was obliged to prove

that Webb "willfully" damaged the helicopter. 18 U.S.C.A. § 32 (West 1969). Unlike *Goodwin, supra,* where the defendant's actions admitted of no exculpatory explanation, the firing of a rifle—particularly in a rural setting—carries no inherent criminal vice. Indeed, the helicopter pilot testified that he flew back near Webb's residence precisely to determine whether the first shooting had been deliberate, a conclusion not unreasonably suggested by the renewed fusillade. Answering the question that we have previously reserved, *see United States v. Salomon,* 609 F.2d 1172, 1174 n. 3 (5th Cir. 1980); *United States v. McMahon,* 592 F.2d 871, 876 & n. 7 (5th Cir. 1979); *Beechum,* 582 F.2d at 915, we now hold that where, as here, "intent is not normally inferable from the nature of the act charged," *United States v. Ring,* 513 F.2d 1001, 1009 (6th Cir. 1975), and the defendant fails to give enforceable pre-trial assurances that he intends not to dispute criminal intent, the Government's case-in-chief may include such extrinsic offense evidence as would be admissible if intent were actively contested. *See United States v. Williams,* 577 F.2d 188, 191 (2d Cir.), *cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). *Cf. United States v. Adcock,* 558 F.2d 397, 402 (8th Cir.), *cert. denied,* 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). As against the possibility that Webb might have claimed that the shooting was accidental, admission of the identical subsequent incident did not work unfair prejudice. Fed.R.Evid. 403.

■ Webb also argues that the district court erroneously excluded certain expert testimony that he lacked "propensity to commit a violent act." Brief for Appellant at 24. The district court apparently considered such testimony, "irrelevant," reasoning that if Webb's alibi were believed "it wouldn't matter whether he was violent or not violent." Tr. 187.[1] The court further found that the proffered testimony fell

---

1. The district court suggested, but did not rule, that the testimony was irrelevant for the additional reason that, as "a personality analysis [and] not a predictor of human behavior," it

lacked substantial probative force. Tr. 190. In light of our holding, we need not pass on this issue.

within Fed.R.Crim.P. 12.2(b),[2] and was excludable because Webb had failed to notify the Government of its intended use. *See* Fed.R.Crim.P. 12.2(d). Although we must reject these legal conclusions as "manifestly erroneous," *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *Perkins v. Volkswagen of America, Inc.*, 596 F.2d 681, 682 (5th Cir. 1979), we nevertheless hold that Webb's experts were properly muzzled.

Fed.R.Evid. 401 provides that evidence is "relevant" if it has "any tendency to make the existence of any [material] fact . . . more probable or less probable than it would be [otherwise] . . . ." The excluded testimony would have purported to show, based on psychological tests, that Webb was non-violent and therefore unlikely to shoot at a helicopter. If competent, that evidence clearly would have some tendency to confirm Webb's alibi, i. e, a peaceable man would more likely be planting turnips than shooting at passing aircraft. Nor can we agree that the proffered testimony fell within Fed.R.Crim.P. 12.2(b). That Rule requires that the Government be notified of testimony "bearing upon the issue of whether [the defendant] had the mental state required for the offense charged." Patently, the excluded testimony was not of that sort. It was offered to prove that Webb did not commit the offense charged, not that certain conduct was unaccompanied by criminal intent. *Cf. United States v. Busic*, 592 F.2d 13, 20–22 (2d Cir. 1978).

But while we thus disagree with the district court's grounds for exclusion, we find ample support for its result in the so-called "opinion rule," *see generally* 7 J. Wigmore, Evidence §§ 1917–29 (Chadbourne rev.ed. 1978), codified in Fed.R.Evid. 701–06. That rule prohibits the admission of opinion testimony, save where the proponent demonstrates the applicability of some exception. Webb plainly sought to invoke the exception recognized for qualified "experts," whose opinions are admissible when their "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Although it seems, these days, that even the most obvious of phenomena admit of "expert" analysis, the opinion rule does not bend so far.

"The theory upon which expert testimony is excepted from the opinion evidence rule is that such testimony serves to inform the court about affairs not within the full understanding of the average man." *Farris v. Interstate Circuit, Inc.*, 116 F.2d 409, 412 (5th Cir. 1941). *Accord, United States v. Amaral*, 488 F.2d 1148, 1152–53 (9th Cir. 1973). The theory clearly has no relevance, and expert testimony is accordingly improper, "when the subject of inquiry is one which common knowledge would enable one to decide." *Duff v. Page*, 249 F.2d 137, 140 (9th Cir. 1957). *Accord, United States v. Joyce*, 511 F.2d 1127, 1130 (9th Cir. 1975). *See United States v. Brown*, 540 F.2d 1048, 1054 (10th Cir. 1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549 (1977). Webb's experts were to testify, in substance, that he was a peaceable, non-violent person. This character trait was as plainly within "the ken of lay jurors," *United States v. Fosher*, 590 F.2d 381, 383 (1st Cir. 1979), as it was a proper subject for lay testimony. *See* Fed.R.Evid. 404(a)(1), 405(a). Indeed, Webb's own character witness so testified. Tr. 211 ("I have never heard anything that he has ever done that ever harmed anybody anywhere"). We hold that Webb's experts were properly excluded, but because their proffered testimony was without Fed.R.Evid. 702.

We have considered appellant's arguments that the trial judge engaged in prejudicial misconduct, and find them without merit.

AFFIRMED.

---

2. Fed.R.Crim.P. 12.2(b) provides, in pertinent part:

> If a defendant intends to introduce expert testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk.